IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

SHARON G. STEWARD,               )
                                 )
              Plaintiff,          )
                                 )
vs.                              )      No. 05-4194-CV-C-SOW
                                 )
METROPOLITAN LIFE INSURANCE       )
COMPANY,                         )
                                 )
              Defendant.          )

ORDER

Before the Court are defendant's Motion for Summary Judgment (Doc. #10), defendant's

Suggestions in Support, plaintiff's Motion for Summary Judgment (Doc. #12), plaintiff's

Suggestions in Support, and defendant's Suggestions in Opposition.  For the reasons stated

below, defendant's motion is granted and plaintiff's motion is denied.

I.  Background

Plaintiff Sharon G. Steward ("Steward") brought this action pursuant to 29 U.S.C. §1132

seeking disability benefits under an ERISA-governed employee welfare plan (the "Plan")

sponsored by AT&T Corp. ("AT&T").  Defendant Metropolitan Life Insurance Company

("MetLife") is the Claims Administrator for the Sickness & Accident Disability Benefit Plan

("SADBP").

The facts pertaining to the parties' Motions for Summary Judgment are uncontroverted.

These facts are as follows:

AT&T provides short-term disability ("STD") benefits to certain eligible employees

through the SADBP.  The SADBP provides:

> You are considered disabled when the Claims Administrator
> determines that you are unable to perform the duties of your job
> and you cannot be accommodated due to an illness or injury at
> another job within the Company.

AT&T funds the STD benefits provided under the SADBP.

Plaintiff Steward was employed by AT&T in a sedentary position as an Account Representative. Ms. Steward was a participant in the SADBP. Plaintiff's last day worked before applying for STD benefits was November 4, 2003. MetLife received plaintiff's claim for STD benefits by telephone on that same day. The medical diagnosis that was reported at that time was stress.

In January of 2003, plaintiff had undergone back surgery, a spinal decompression and fusion. Plaintiff Steward saw her orthopedist, Ribert M. Drisko II, M.D., on November 25, 2003 for follow-up on her spinal decompression and fusion. Dr. Drisko noted:

> Her back pain, radicular pain, and bladder are all better than
> preoperatively, but she is still having discomfort on occasion. She
> is having a lot of personal problems, and mainly for these reasons
> she is not working. She does also have pain over her sacroiliac on
> the left. Her battery is bothering her a little bit.

Dr. Drisko thought plaintiff needed to concentrate on exercise and that her bone growth stimulator battery should come out if it bothered her.

In a December 1, 2003 telephone interview with a MetLife employee, plaintiff reported that she had been off work from October of 2002 through May 26, 2003 due to her back surgery in January of 2003. During this telephone interview, plaintiff stated that her current symptoms were crying, pain, grieving for her father who was dying of cancer, stress, insomnia, and reduced appetite. Plaintiff identified various life stressors, including her father's illness, medical

2

conditions of other family members, and financial difficulties that resulted in the loss of her house and car.

The following day, December 2, 2003, MetLife conducted a telephone interview with plaintiff's psychologist, Glenn Collet, M.D., who indicated that plaintiff was seeing him one to two times per week. Dr. Collet stated that plaintiff's diagnoses were major depression recurrent and generalized anxiety. At that time, plaintiff's Global Assessment Function ("GAF") was 60. Dr. Collet reported that plaintiff experienced memory loss, cognitive dysfunction, depression, fatigue, three to four panic attacks per week, and problems with concentration, but added that her prognosis was fair to good.

An office note dated December 23, 2003, from plaintiff's treating psychiatrist, Michael Navato, M.D., described plaintiff as having an anxious, labile mood, and being mildly depressed without danger to self or others. Dr. Navato's assessment was major depressive disorder, recurrent, anxiety disorder, and post-traumatic stress disorder ("PTSD"). Dr. Navato prescribed medication along with individual therapy weekly with Dr. Collet and group therapy. Dr. Navato stated that plaintiff was not released to return to work until February.

Dr. Navato saw plaintiff again on January 6, 2004. Dr. Navato noted that plaintiff was due for surgery for her back and was resting better with a combination of medications. His assessment and plan remained the same.

Plaintiff returned to Dr. Navato on January 30, 2004, following the death of her ex-husband/fiancè on the preceding Sunday. Dr. Navato's assessment was major depressive disorder, recurrent, anxiety disorder and bereavement. His plan was medication, routine groups, and follow up in three to four weeks. Groups for grief and loss were recommended by Dr.

3

Navato. Dr. Navato's office notes reflect follow up visits on February 23 and 24, 2004. His assessment remained the same. Dr. Navato's plan was to continue with plaintiff's medication and group therapy. Dr. Navato stated that plaintiff was not to return to work at this time.

Dr. Drisko examined plaintiff on March 2, 2004. Plaintiff was still experiencing some pain. Plaintiff stated that she did not feel that she could return to work at that time and Dr. Drisko agreed. He recommended that plaintiff continue with her exercise program and an anti-inflammatory medication.

On March 10, 2004, Dr. Collet provided MetLife with his office notes from December 2, 2003 through March 6, 2004. Dr. Collet sent a letter which stated in relevant part:

> The patient has been very compliant with her arranged therapy appointments. The patient's symptoms are characterized as follows: depressed affect, lack of energy, psychomotor agitation, feelings of hopelessness, low self-esteem, unresolved grief and diminished interest in activities. It should be noted that Sharon has had extensive back pain, surgery & rehabilitation during these past months.
>
> Memory impairment, cognitive dysfunction, and lack of concentration are symptoms inhibiting her to work. The last couple of weeks she has been coping with the unexpected death of her husband. Currently her father is about to die from a long tern bout with cancer.
>
> Goals of therapy are to alleviate the depressed mood, develop healthy cognitive pattern about self and recognize feelings of depression. She must also begin the grieving process around the loss of her husband and father. Sharon's life is dominated by the loss of her husband, chronic pain with back rehabilitation, and the upcoming death of her father.
>
> The patient requires additional time off from work before she can return to light duties. If I can be of further assistance, please do not hesitate to call.

4

Dr. Collet stated, in response to a question from MetLife, that plaintiff could be expected to return to work on May 1, 2004.

MetLife had plaintiff's claim reviewed by Lee H. Becker, M.D., an Independent Physician Consultant, Board Certified in Psychiatry. Dr. Becker issued a report dated March 16, 2004. Dr. Becker observed:

> The information available to review by the Psychiatrist does not document specific and significant Axis I psychiatric symptoms targeted for treatment currently. The psychiatric notes indicate no substantive medication changes and no medication side effects impacting. There appear to be no significant deficits on mental status examination and there is no indication of significant impairments in daily functioning. The progress notes cite various family and personal medical issues that may be impacting motivation to return to work.
>
> The Psychotherapist's documentation also indicates medical issues and family issues discussed. The Psychotherapist's notes do not reference current activities of daily living.
>
> The documentation reviewed does not indicate ongoing active collaboration regarding treatment planning and return to work planning between the Mental Health Clinicians.

Dr. Becker recommended a teleconference with either Dr. Navato or Dr. Collet.

Plaintiff saw Dr. Navato on March 23, 2004 and reported that her father had died the preceding Friday. Plaintiff was tearful and upset. Dr. Navato noted that plaintiff was wearing a back brace twelve hours a day. His assessment remained the same. Dr. Navato's treatment plan included medication and he added a new prescription. Plaintiff was also directed to continue with group and individual sessions.

Dr. Becker had a teleconference with Dr. Collet on April 6, 2004. Dr. Becker prepared a report after the teleconference in which he concluded:

5

> The information obtained from the Psychotherapist today indicates that there has been no significant improvement with the current mental health treatment plan. There is limited information as to the details of how the Claimant is structuring her time. There is some possible inconsistency in that the Therapist indicates the Claimant was unable to sit for work, but describes the Claimant was recently sitting home at her deceased's father's bedside in the past weeks.
>
> I would recommend the MetLife Case Management Team followup for additional changes in psychiatric treatment plan after the Mental Health Clinicians collaborate. Additionally, more detailed information on activities of daily living would be useful.

MetLife continued to approve benefits.

Dr. Navato saw plaintiff on April 8, 2004 and continued his plan of medication. Dr. Becker had a teleconference with Dr. Navato on April 12, 2004. Dr. Navato stated that he saw plaintiff approximately every three weeks for checks on medication and that plaintiff came about every two weeks to group therapy for individuals in crisis and with depression. Dr. Navato described plaintiff as struggling with grief and loss issues, including the unexpected loss of her newly reconciled ex-husband in the recent past. According to Dr. Navato, there was no indication that plaintiff was suffering from psychosis or a significant cognitive impairment. He acknowledged that he had not verbally collaborated with plaintiff's psychotherapist, Dr. Collet, although he received notes from Dr. Collet. Dr. Navato explained to Dr. Becker that he had encouraged plaintiff to get out of her house more frequently. Dr. Navato felt that plaintiff would be ready to return to work part time in "about two months."

After this teleconference, Dr. Becker noted that there had been no collaboration between Dr. Navato and Dr. Collet. In addition, while plaintiff's back problems were being cited as a factor impacting plaintiff's ability to return to work, there had been no collaboration with

6

plaintiff's primary care physician. Dr. Becker recommended that the MetLife Management Team follow up with Dr. Collet to obtain details on any treatment collaboration and to review for any changes in the treatment plan.

Defendant MetLife took Dr. Becker's recommendation and continued to follow plaintiff's progress. Plaintiff saw Dr. Drisko on May 4, 2004. Plaintiff was continuing to experience low back pain, although her radicular and bladder pain had resolved for the most part. Plaintiff was tender in the area where her battery was located, but she was hesitant to have it removed. Dr. Drisko recommended a hydrotherapy program.

Dr. Navato saw plaintiff on May 11, 2004. In addition to medication, individual therapy twice per week, and group therapy three times per month, Dr. Navato encouraged plaintiff to stay out of her home. He also recommended that she begin the process of getting ready to return to work on July 11, 2004.

Plaintiff saw Dr. Drisko on June 2, 2004, complaining of pain into her lower lumbar area. Plaintiff reported that she had been in a rehabilitation program, but had a bad day with back pain on the preceding Friday and wanted to be assessed. Plaintiff stated to Dr. Drisko that she did not feel that she could return to work. Dr. Drisko recommended a CT scan to assess the fusion mass.

During a June 8, 2004 visit, Dr. Navato observed that plaintiff was making progress in getting ready to return to work.

On June 17, 2004, plaintiff saw Dr. Drisko who stated that he needed to review the CT scan with radiology to determine whether the fusion was solid enough.

Plaintiff saw Dr. Navato on June 6, 2004 and reported that she was anxious about the planned return to work the following Monday. Dr. Navato noted that plaintiff's attention was

improved, but her concentration was reduced. He stated that she had a regression of her symptoms. Dr. Navato advised that plaintiff take long term disability and stated that she was unable to return to work because of depression, anxiety, and difficulty focusing.

Thereafter, Dr. Becker reviewed plaintiff's claim again on July 14, 2004 and filed another report. Dr. Becker noted that plaintiff continued in supportive group therapy for grief and loss issues along with medication management. He observed that there was little documentation about plaintiff's compliance with medications and that "the current medication strategy appears to have significant polypharmacy and the rationale for the multiple psychotropics without maximizing the dosage of the initial psychotropics is unclear." Dr. Becker added that the psychiatric office notes did not contain complete mental status examinations and that the available documentation "does not support significant, objective findings in terms of significant impairments in thought content or significant abnormalities in thought processing, memory or concentration that would impair functioning." He again stated that there was no documentation that active treatment collaboration was occurring between the psychiatrist and the psychotherapist or between the psychiatrist and the doctor treating plaintiff's back problems. Dr. Becker observed that some of the concerns expressed by the plaintiff appeared "suggestive of interest in romantic activity which is atypical for someone with a severe depressive disorder or a severe grief reaction." Dr. Becker concluded his report with a recommendation of a mental health Independent Medical Examination ("IME").

At Dr. Becker's suggestion, defendant MetLife scheduled an IME. This IME was conducted by Keith Allen, PhD., licensed psychologist, on July 27 and 28, 2004. Plaintiff reported that her back pain was too much for her to complete testing on the first day, so she

participated for three hours and forty-five minutes on July 27 and then returned for two hours on July 28 to complete the testing.

Plaintiff told Dr. Allen that she had attempted to return to work in May of 2003 after her January 2003 back surgery, but that she was unable to sit or stand for long periods of time. Dr. Allen observed that plaintiff's speech was coherent, logical, and goal oriented, and that she had no difficulty finding words. He stated that there were no signs of mental confusion, disorganization, or loss of reality contact. Dr. Allen noted that plaintiff's motivation to return to the work place was low due to plaintiff's report that she wanted to stay home and take care of her mother.

Dr. Allen listed plaintiff's GAF as 60. He concluded that plaintiff was "not globally impaired due to mental/emotional problems that would preclude her from performing all of her job duties." Dr. Allen stated that plaintiff's primary difficulties with activities relate to her claim that she is unable to sit or stand for prolonged periods of time. Dr. Allen observed that medical evidence was necessary to determine if plaintiff's reported pain was being exaggerated out of proportion to medical findings.

On August 4, 2004, MetLife faxed requests to Dr. Collet and Dr. Navato, asking for current medical records and an opinion on whether plaintiff could return to work in a full time or part-time capacity. Additional medical records were received, including an August 3, 2004 office note from Dr. Navato in which he stated that plaintiff had experienced another relapse due to a friend's death or murder.

Plaintiff saw Dr. Drisko on August 10, 2004. He noted that plaintiff's main complaint of pain was in the area of her battery in the left side of her back. Dr. Drisko listed a plan of exercise

9

as tolerated, planned battery removal, and then spine rehabilitation.  Plaintiff also complained of

pain in her left hand and an EMG confirmed carpal tunnel syndrome.

On August 23, 2004, MetLife wrote plaintiff, advising that the medical documentation

received did not support her claim of disability, that her absence had not been medically certified

for the period of August 19, 2004, through the present, that disability benefits were being

withheld for the period August 19, 2004 through the present, and that if the medically non-

certified status of her absence remained unchanged by September 6, 2004, her claim would be

denied.

MetLife also continued to consider plaintiff's claim and had plaintiff's pain complaints

reviewed by R. Kevin Smith, D.O., Board Certified in Preventive Medicine and Occupational

Medicine.  Smith prepared a seven-page report dated September 14, 2004 in which he concluded

that plaintiff's medical records did not indicate objective clinical findings of a severity or

functional limitations or impairments of a severity that would preclude her from returning to her

regular sedentary job as of August 10, 2004.  Smith supported this conclusion by stating that

plaintiff's medical records did not indicate an objective medical basis for such severe pain as to

preclude sedentary work.  Plaintiff had been managed with minimal narcotic medication.  She

had not been referred to a pain management specialist.  In fact, her doctor had repeatedly

encouraged her to exercise.

Based upon its review of the file, MetLife advised plaintiff in a letter dated September 21,

2004, that benefits would not be paid for the period August 19, 2004 through the present.

MetLife informed plaintiff that the medical documentation received by MetLife did not support

physical or psychological impairments that would preclude plaintiff from performing her

sedentary job as an account representative. MetLife referred to Dr. Allen's findings which indicated that plaintiff was not globally impaired due to mental or emotional problems that would prevent her from performing her job duties. The letter also referenced Smith's conclusion that the medical records did not indicate an objective medical basis that would support plaintiff's complaint of chronic low back pain of such severity that she was precluded from working. Plaintiff was advised of the procedure for appealing to AT&T's Benefit Claim and Appeal Committee ("BCAC").

Under the terms of the SADBP,

> The BCAC shall serve as the final review committee under the SADBP and shall have sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the SADBP, any and all questions arising from administration of the SADBP and interpretation of all SADBP provisions, determination of all questions relating to participation of eligible employees and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable to any participant, lawful spouse or beneficiary, and construction of all terms of the SADBP.

Plaintiff appealed by submitting a letter which was received by defendant MetLife on October 18, 2004. Plaintiff contacted MetLife on November 5, 2004 and stated that she had received her claim file and that she disagreed with the IME results. Plaintiff stated that she was appealing the denial of further benefits. Plaintiff was advised that MetLife had received a form from Dr. Drisko and an office note of October 12, 2004, and that those would be included in the appeal review.

The form completed by Dr. Drisko and dated October 12, 2004, indicated that plaintiff's battery had been removed on September 24, 2004. Dr. Drisko stated that plaintiff was disabled

11

from working from January 28, 2004 through the present and that he had not advised plaintiff to

return to work because she was unable to sit. Asked to circle the number of hours plaintiff could

sit, stand, and walk, Dr. Drisko circled "0" for each. Dr. Drisko's office note from October 12,

2004 indicated that plaintiff reported her back pain continuing to significantly interfere with her

activities. Dr. Drisko opined that plaintiff was "unemployable" at that time.

The BCAC upheld the denial of further benefits and so advised plaintiff by letter dated

December 16, 2004. The letter stated in pertinent part:

> In reaching the decision to render an adverse benefit determination
> on your appeal, the BCAC reviewed your complete medical file
> and concluded that the medical documentation provided did not
> indicate any impairments, complications or a level of severity that
> would have prevented you from returning to work on August 19,
> 2004. On July 27th and 28th you were evaluated by an Independent
> Medical Examiner (IME), Dr. Allen. Dr. Allen stated in his report
> "Ms. Steward is not globally impaired due to mental/emotional
> problems that would preclude her from performing all of her job
> duties . . . ." On September 14, 2004, MetLife's Independent
> Physician Consultant (IPC) reviewed your medical file to evaluate
> your physical condition. The IPC stated, "Although she has
> complaints of pain primarily in the lower back, the medical records
> do not indicate objective clinical findings of a severity or
> functional limitations or impairments of a severity that would
> preclude her from returning to her regular sedentary job as of
> 8/10/04. The medical records do not indicate an objective medical
> basis for such severe pain as to preclude sedentary work . . . . No
> neuromuscular deficits or impairments have been documented in
> the medical records . . . ."

> Therefore, for the above reasons, the Committee upheld the denial
> of your Sickness Disability Benefits for the period of absence
> beginning August 19, 2004 through September 20, 2004, as they
> concluded the medical documentation was insufficient to support a
> continued absence beyond August 18, 2004.

12

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Where an ERISA-governed plan gives an administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the decisions of the administrator or fiduciary for an abuse of discretion. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640-41 (8th Cir. 1997)(court must affirm if a reasonable person *could* have reached a similar decision)(emphasis in original).

Under the terms of plaintiff Steward's SADBP, MetLife, as the Claims Administrator, is responsible for the initial determination of claims for STD benefits. The SADBP gives discretionary authority to MetLife. The BCAC, as "the final review committee under the SADBP," is responsible for reviewing and determining any appeal. The propriety of the denial of plaintiff's claim must be determined under the "abuse of discretion" standard. *See* Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 111 (1989); McGee v. Reliance Standard Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004).

13

Defendant MetLife argues that its determination that the record before it did not show that plaintiff met the Plan's requirements for STD benefits under the SADBP after August 18, 2004 and the BCAC's determination, reaching the same conclusion on appeal, were reasonable and supported by substantial evidence in the record. Plaintiff contends that the decision to terminate her benefits was not reasonable.

The Court notes that plaintiff was off work from November of 2002 through May of 2003 in relation to a back surgery that was performed in January of 2003. Plaintiff was able to return to work in May of 2003 and continued working until November of 2003, a period of six months.

Plaintiff's psychiatric complaints were the principal basis for the disability claim that she made in November of 2003. Plaintiff asserted that she was unable to work due to stress. After making this disability claim, plaintiff's fiancè died. Then, plaintiff's father passed away from cancer. MetLife initially approved short term disability benefits and then continued to approve benefits after plaintiff's fiancè and father died. Benefits were withdrawn only after plaintiff's psychiatrist recommended a return to work and plaintiff refused. It is significant that plaintiff's GAF was never lower than 60 and there was no documentation of impairments that would preclude plaintiff from working after August 18, 2004

MetLife had plaintiff's claim reviewed by Dr. Becker who repeatedly noted the absence of significant deficits on plaintiff's mental status examination and the absence of any indication that plaintiff was significantly impaired in daily functioning. Dr. Becker spoke with both plaintiff's treating psychiatrist and treating psychologist. He noted that the psychiatric office notes did not contain complete mental status examinations and did not support a finding of

significant impairment.

An IME conducted by Dr. Keith Allen revealed that plaintiff was not globally impaired due to mental or emotional problems in a way that would preclude her from returning to her job duties. Dr. Allen observed that plaintiff was able to follow relatively complex instructions without apparent difficulty and did not request that questions or instructions be repeated.

Plaintiff Steward relies solely on Abram v. Cargill, Inc., 395 F.3d 882 (8th Cir. 2005) to support her argument that she was not accorded a full and fair review of her disability claim because MetLife did not consider whether her mental impairments and her physical impairments, taken together, precluded her from returning to her job duties.

Contrary to plaintiff's argument, even though plaintiff's disability claim was based on her reported anxiety and stress, MetLife also considered plaintiff's complaints of back pain. Plaintiff's treating physician, Dr. Drisko, found that plaintiff had a solid spinal fusion, as shown by her X-rays. An IME performed by R. Kevin Smith reached the same conclusion. Smith noted that plaintiff had been managed with minimal narcotic medication, that exercise had been repeatedly encouraged by Dr. Drisko, and that plaintiff had never been referred to a pain management specialist. There was no evidence to support a claim that plaintiff was experiencing severe back pain that would prevent her from returning to work at a sedentary level.

Furthermore, the BCAC considered all of plaintiff's complaints in making the final determination on plaintiff's claim. There is no indication in Abram v. Cargill, Inc. that a single doctor must consider all the allegedly disabling conditions. Rather, the administrator cannot ignore evidence of a potentially disabling condition. 395 F.3d at 887.

While plaintiff faults defendant's IME s for having been completed by two different

15

doctors within their own specialities, Dr. Becker repeatedly pointed out that no coordination of treatment was occurring between plaintiff's own treating doctors.

The Court finds that MetLife's decision was well supported by the information available to MetLife and was a reasonable decision. A plaintiff suing under 29 U.S.C. §1132(a)(1)(B) to recover benefits under an employee welfare benefit plan has the burden of proving her entitlement to benefits. <u>Farley v. Benefit Trust Life Ins. Co.</u>, 979 F.2d 653, 658 (8th Cir. 1992). Plaintiff has failed to demonstrate that the decision was an abuse of discretion.

IV. <u>Conclusion</u>

Accordingly, for the reasons stated above, it is hereby

ORDERED that defendant's Motion for Summary Judgment (Doc. #10) is granted. It is further

ORDERED that plaintiff's Motion for Summary Judgment (Doc. #12) is denied.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: <u>June 20, 2006</u>